IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| **LINEX TECHNOLOGIES, INC.,** § | | |
| § | | |
| Plaintiff, § | | |
| § | | |
| vs. § | CIVIL ACTION NO. 2:07cv222 | |
| § | | |
| **BELKIN INTERNATIONAL, INC., et al.,** § | | |
| § | | |
| Defendants. § | | |

## MEMORANDUM OPINION & ORDER

Before the Court is Defendants Belkin International, Inc.; Buffalo Technology (USA) Inc.; D-Link Systems, Inc.; Cisco-Linksys LLC (United States), Inc.; Netgear, Inc.; Phoebe Micro, Inc.; Dell Inc.; Gateway, Inc.; Lenovo (United States) Inc.; and Toshiba America Information Systems, Inc.'s (collectively, "Defendants") Motion to Strike Linex's Infringement Contentions or in the Alternative, Motion to Compel Linex to Provide Infringement Contentions that Comply with Patent Rule 3-1. (Doc. No. 214). Plaintiff Linex Technologies, Inc. ("Linex") has filed an Opposition. (Doc. No. 221). Defendants have also filed a Reply. (Doc. No. 226).

This Court also ordered the parties to submit expert affidavits responding to a series of technical questions regarding the underlying technology, as it pertains to the instant motion. (Doc. No. 225). In response, Plaintiff submitted an affidavit from Joseph Garodnick, the Director of Research and Development at Linex Technologies, Inc. (Doc. No. 227). Defendants jointly submitted an affidavit from Kevin J. Negus, Ph.D., an expert witness retained by Defendant Cisco-

Linksys LLC (Doc. No.228, Exh. A).[1]  With respect to the questions that apply to each Accused Product, Defendants each submitted separate affidavits or declarations.  (Doc. No. 229, Exh. B–J).

The instant motion presents a number of issues with respect to the adequacy of Plaintiff's Infringement Contentions, required by Patent Rule 3-1.  MOTION, Exh. B–K.  Having fully considered the parties' arguments and for the reasons set forth herein, the Court hereby **GRANTS-IN-PART** and **DENIES-IN-PART** Defendants' motion.

## BACKGROUND

On June 1, 2007, Plaintiff filed the instant suit against Defendants alleging infringement of U.S. Patent No. 6,757,322 ("the '322 patent").  The '322 patent teaches a system and method for transmitting a plurality of spread-spectrum signals, radiated by a plurality of antennas, over a communications channel having fading.  The asserted claims of the '322 patent teach wireless communications systems and methods using multiple transmission and reception antennas in order to overcome fading and shadowing effects found in a multipath environment.

Plaintiff asserts four claims of the '322 patent: claims 1, 9, 25, and 33.  On March 13, 2008, Plaintiff served its "Disclosure of Asserted Claims and Infringement Contentions" pursuant to Patent Rule 3-1.  MOTION, Exh. B–K.  Plaintiff's Infringement Contentions list a significant number of Accused Products including, among others, wireless routers, wireless networking cards, and laptop computers that comply with the IEEE 802.11n wireless networking draft standard.[2]

---

[1] Dr. Negus answered each question with respect to 802.11n, generally, with the exception of question four, where Dr. Negus focused on IEEE P802.11n/D5.0 May 2008 for particular portions of the question.  NEGUS AFFIDAVIT at 16.

[2] While the IEEE 802.11n standard is still in draft form, Plaintiff has decided to use 802.11n/D2.00—the second draft version—as the standard for its infringement contentions.

On July 11, 2008, Defendants filed the instant motion to strike Plaintiff's Infringement Contentions, or in the alternative requesting an order to compel Plaintiff to provide Infringement Contentions that comply with Patent Rule 3-1. Defendants assert that Plaintiff's Infringement Contentions fail to satisfy Patent Rule 3-1.

## **LEGAL STANDARD**

Pursuant to Rule 83 of the Federal Rules of Civil Procedure, this Court has adopted Local Patent Rules to assist with case management in patent cases. Fed. R. Civ. P. 83; *Computer Acceleration Corp. v. Microsoft Corp.*, 503 F. Supp. 2d 819, 821 (E.D. Tex. 2007) (Clark, J.) (recognizing adoption of Local Patent Rules as valid exercise of a court's authority). The Local Patent Rules "exist to further the goal of full, timely discovery and provide all parties with adequate notice and information with which to litigate their cases." *Computer Acceleration*, 503 F. Supp. 2d. at 624 (citations omitted).

Patent Rule 3-1 provides that any party "claiming patent infringement must serve on all parties a 'Disclosure of Asserted Claims and Infringement Contentions.'" PATENT RULE 3-1. Additionally, Patent Rule 3-1 delineates all of the information that such Infringement Contentions must contain, including a list of each claim of each patent asserted to be infringed; each accused product; and each element of each asserted claim and the corresponding structure or step within the accused product. PATENT RULE 3-1(a)–(c). Patent Rule 3-1 goes on to provide, "[s]eparately for each opposing party, the [Infringement Contentions] shall contain . . . [a] chart identifying specifically where each element of each asserted claim is found within each Accused Instrumentality." PATENT RULE 3-1(b).

The Patent Rules require plaintiffs to "set forth specific theories of infringement at the outset of the case" utilizing all publicly available information. *Orion IP, LLC v. Staples, Inc.*, 407 F. Supp. 2d 815, 817 (E.D. Tex. 2006) (Davis, J.) (citing *Am. Video Graphics, L.P. v. Elec. Arts, Inc.*, 359 F. Supp. 2d 558, 560 (E.D. Tex. 2005) (Davis, J.)). Enough specificity is required to give an alleged infringer notice of the patentee's claims. *Computer Acceleration*, 503 F. Supp. 2d at 823; *see also Orion*, 407 F. Supp. 2d. at 817 (citing *Connectel, LLC v. Cisco Systems, Inc.*, 391 F. Supp. 2d 526, 527–28 (E.D. Tex. 2005) (Davis, J.)).

## DISCUSSION

Defendants make a number of arguments in support of the motion. First, Defendants argue that Plaintiff's use of the 802.11n standard as a basis for its Infringement Contentions is inadequate under the Patent Rules. Second, Defendants argue that Plaintiff's Infringement Contentions consist of one generic claim chart for each Defendant, failing to take into account the differences that exist among each Accused Product. Finally, Defendants' remaining arguments are directed to specific claim limitations. Each argument will be addressed in turn.

**I.   Infringement Contentions Based on the 802.11n Draft Standard**

The Accused Products include not only products compliant with the 802.11n draft standard, but also products which are compliant with other 802.11 standards, specifically b and g.[3] The following section, I(A), *infra*, discusses the 802.11n-compliant Accused Products, while all other Accused Products are discussed in section I(B), *infra*.

---

[3] Hereinafter, the Accused Products which are not compliant with the 802.11n standard will be referred to as "non-compliant" Accused Products.

**A. 802.11n-Compliant Accused Products**

Defendants first argue that the overarching problem with Plaintiff's Infringement Contentions is the use of the 802.11n standard as a baseline for its Infringement Contentions. MOTION at 7. Defendants assert that Plaintiff's Infringement Contentions are vague and conclusory, and even if the use of the 802.11n standard was sufficient, Plaintiff has failed to specifically identify where each claim limitation corresponds to a particular specification in the 802.11n draft standard. *Id.* at 8.

Plaintiff responds that its Infringement Contentions compare each claim limitation to elements of the 802.11n draft standard out of necessity. OPPOSITION at 3–4. Plaintiff asserts that currently it is not possible to provide detailed Infringement Contentions, including analysis regarding chipsets, software, and operation of the Accused Products because such information is not publicly available. *Id.* at 4. Plaintiff also repeatedly stresses that it has agreed to amend its Infringement Contentions once the necessary information is disclosed during discovery. *Id.* at 2, 3, 5, 9.[4]

Serving Infringement Contentions on opposing parties before discovery has begun serves to narrow and focus the subsequent discovery. The Patent Rules require parties to evaluate their infringement contentions early in litigation, so "the case takes a clear path, focusing discovery on building precise final infringement or invalidity contentions and narrowing issues for *Markman*, summary judgment, trial, and beyond." *Connectel, LLC v. Cisco Systems, Inc.*, 391 F. Supp. 2d 526, 527 (E.D. Tex. 2005) (Davis, J.). Therefore, Infringement Contentions must provide "particular theories of infringement with sufficient specificity to provide defendants with notice of infringement beyond that which is provided by mere language of the patent rules themselves."

---

[4] At the hearing, Plaintiff's counsel emphasized its willingness to amend, but unequivocally stated that as the Infringement Contentions now stand, Plaintiff asserts the disclosure is sufficient under Patent Rule 3-1.

*STMicroelectronics, Inc. v. Motorola, Inc.*, 308 F. Supp. 2d 754, 755 (E.D. Tex. 2004) (Davis, J.).

Here, Plaintiff served Infringement Contentions that satisfied Patent Rule 3-1 in a number of respects. As required, Plaintiff listed each asserted claim and specifically listed model numbers of Accused Products. PATENT RULE 3-1(a), (b). Plaintiff also included a separate chart for each asserted claim and indicated whether each claim is literally infringed or present under the doctrine of equivalents. PATENT RULE 3-1(c), (d). However, Plaintiff failed to identify where each limitation of each asserted claim is found within each Accused Product. PATENT RULE 3-1(c) ("[s]eparately for each opposing party, the [Infringement Contentions] shall contain . . . [a] chart identifying specifically where each element of each asserted claim is found within each Accused Instrumentality"). Instead, Plaintiff linked each claim limitation to the 802.11n draft standard. In this way, Plaintiff created a single claim chart for each asserted claim and served that same claim chart on every Defendant, notwithstanding the fact that Defendants each manufacture different Accused Products.[5] In essence, Plaintiff sought to rest on the vaguely articulated notion that networks which conform to the draft 802.11n standard conform to the teachings of the '322 patent, and 802.11n-compliant products therefore necessarily infringe the '322 patent.

While using the 802.11n standard as the starting point for infringement is permissible, Plaintiff failed to demonstrate how each Accused Product conforms to the standard. Linking each Accused Product—or even exemplary Accused Products—to the draft standard would add the information and specificity needed to comply with the requirements of Patent Rule 3-1. Instead, Plaintiff rested on each Accused Product's advertised compliance.

---

[5] At the hearing, Defendants represented that there are at least sixty-eight Accused Products.

There may be times where an industry standard is sufficiently particular to alone be the basis for infringement cases. *See Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1272, 1275–76 (Fed. Cir. 2004) (noting plaintiff's permissible use of IEEE 1394 standard for infringement arguments). Here, however, reliance on this industry standard alone is inappropriate. Although the 802.11n draft standard provides operational and functional guidelines for implementing compliant designs, the standard is insufficient to put Defendants on notice of how each particular Accused Device is alleged to infringe the asserted claims. While Defendants do not dispute the advertised compliance of any Accused Products, Plaintiff cannot rest its Infringement Contentions on this standard alone without specifically linking the 802.11n-standard configuration to the Accused Products.

Plaintiff argues that using the 802.11n standard as a basis for the Infringement Contentions is sufficient because the purpose of the 802.11n standard is to provide operational uniformity. OPPOSITION at 3–4. Plaintiff adds that, "[b]y their very nature, products operating in conformity with a particular standard must comply with that standard regardless of whether they incorporate different components, chipsets or design implementations from multiple vendors." *Id.* at 4. However, Plaintiff fails to take into account that the way in which each Accused Product is alleged to infringe the '322 patent will not necessarily be the same, even though all Accused Products are compliant with the 802.11n standard. Not only are there numerous different kinds of Accused Products—including wireless routers, wireless networking cards, and laptops—but the 802.11n standard does not outline specific implementation details for compliant devices. *See* GARODNICK AFFIDAVIT at 5 ("the specific implementation of the hardware, software, and/or firmware configurations in 802.11n is left to the designer"); NEGUS AFFIDAVIT at 14. As a result, the allegedly

7

infringing operations of the Accused Products are not self-evident to Defendants based solely on the 802.11n compliance. Plaintiff has neither set forth how any Accused Product is specifically alleged to infringe, nor how an 802.11n-compliant device would necessarily infringe. Thus, compliance alone with the 802.11n draft standard is not sufficient in this case.

Plaintiff also argues that its decision to use the 802.11n standard as the basis for its Infringement Contentions arose out of necessity. OPPOSITION at 4. Plaintiff asserts that the operation of the components and the specific chipsets of the Accused Products are not ascertainable from publicly available information. *Id.* Plaintiff compares this case to software cases where this Court has previously recognized the limitations on a plaintiff's ability to provide sufficiently detailed infringement contentions when the source code for such software is proprietary. *Id.* at 4–5.

To a point, this argument has merit. To the extent that proprietary firmware or software used in any Accused Product corresponds to particular claim limitations, Plaintiff may be currently unable to specifically delineate that portion of the Infringement Contentions.[6] However, Plaintiff has failed to specifically delineate how the operation of any Accused Product corresponds to any claim limitation, aside from pointing to the 802.11n standard. This is a situation where there is publicly available information which, if utilized, would have provided more information to Defendants than Plaintiff's Infringement Contentions did in this case. Though this information may not have fully answered all of Defendants' questions regarding the Infringement Contentions, such information would have provided more information than was initially disclosed.

---

[6] Plaintiff's expert, Mr. Garodnick, indicated that "proprietary code created by the manufacturer or licensed from the [hardware] manufacturer" is generally incorporated as firmware in the Accused Products, and these details are not publicly available. GARODNICK AFFIDAVIT at 4. To the extent that such proprietary information is possessed by Defendants, such information should be disclosed through discovery. To the extent that such proprietary information is in the possession of third-parties and is necessary, Plaintiff will need to—and has indicated an intention to—subpoena those third parties.

Therefore, the use of an industry standard as the basis for infringement contentions is permissible, and in certain cases may even be sufficient to put a defendant on notice of the plaintiff's assertions of infringement. Where—as here—an industry standard fails to delineate details which are critical to an assertion or determination of infringement, such a standard will not, alone, suffice as the basis for Infringement Contentions required by this Court's Patent Rules. In sum, Plaintiff must explain how each Accused Product is asserted to infringe each claim limitation. By relying on the 802.11n standard as the basis for its Infringement Contentions, Plaintiff has not complied with the requirements of Patent Rule 3-1.

### B. All Other Accused Products

With regards to non-compliant Accused Products, Defendants argue that Plaintiff has failed to offer any theory of infringement. MOTION at 7. Plaintiff responds that it included products which are not compliant with the 802.11n standard because "it appears that the chipsets incorporated into these products overlap with those incorporated into 802.11n products." OPPOSITION at 9. Plaintiff adds that the non-compliant products incorporate multiple transmit and receive antennas and include the same components and modulation schemes as the 802.11n products. *Id.* Plaintiff therefore asserts that the non-compliant Accused Products meet the asserted claim limitations in the same manner as the compliant products. *Id.*

For all of the reasons noted in the previous section, I(A), *supra*, Plaintiff's Infringement Contentions regarding the non-compliant products are inadequate. Moreover, even if the Infringement Contentions were adequate with regards to the 802.11n products, the non-compliant products fall completely outside of the logical syllogism Plaintiff tries to rely on in the instant motion. Plaintiff essentially asserts that networks which conform to the draft 802.11n standard

conform to the teachings of the '322 patent, and products which are compliant with the 802.11n standard therefore necessarily infringe the '322 patent. With regard to non-compliant products, Plaintiff adds that the non-compliant Accused Products operate just as the 802.11n-compliant products do for the purposes of infringement.[7] However, Plaintiff's Infringement Contentions fail to even identify which Accused Products are non-compliant, let alone explain how these non-compliant Accused Products are alleged to infringe.

Since Plaintiff has chosen to use the draft standard as a basis for infringement, Plaintiff cannot now assert that non-compliant products infringe in exactly the same manner without laying out some level of detail to explain to the Defendants how the non-compliant products are asserted to infringe. Plaintiff could have chosen to mold its Infringement Contentions in any of a number of ways. Since Plaintiff chose to use the 802.11n draft standard as a basis for infringement, non-compliant products must be addressed separately on a product-by-product basis, and in such detail as to explain how such non-compliant products specifically infringe.[8]

## II. Infringement Contentions and Specifically Accused Products

Defendants next argue that because Plaintiff's Infringement Contentions consist of one generic claim chart, Plaintiff's Infringement Contentions fail to take into account the differences that exist among each Accused Product. MOTION at 9–10. Defendants contend that even if Plaintiff had

---

[7] Although Plaintiff did not specify in the papers what operations within the non-compliant products are significant, Plaintiff indicated at the hearing on the instant motion that the '322 patent teaches a certain configuration of Multiple Input Multiple Output ("MIMO") technology and that is what is utilized by the non-compliant Accused Products. Furthermore, Plaintiff's expert, Mr. Garodnick, also indicates that the non-compliant Accused Products are all advertised as and utilize MIMO technology. GARODNICK AFFIDAVIT at 8.

[8] As explained below, Plaintiff must supplement the Infringement Contentions on a product-by-product basis, unless all parties can agree on another method. If the parties can agree on exemplary products, Plaintiff may supplement using exemplary products. Similarly, if all the parties can agree, Plaintiff may supplement using categories of products. However, if no agreement can be reached, Plaintiff must separately delineate specific Infringement Contentions for every Accused Product on an individual basis.

explained how the 802.11n standard meets the limitations of the asserted claims, the claim chart does not disclose a single contention for any Accused Product and Patent Rule 3-1 requires this level of specificity. *Id.* at 10.

In response, Plaintiff argues that the Patent Rules do not require a separate claim chart for each Accused Product. OPPOSITION at 6. Citing *Connectel, LLC v. Cisco Systems, Inc.*, Plaintiff asserts that comparing an exemplary Accused Product to each asserted patent claim, element by element, is sufficient. *Id.* Plaintiff acknowledges that the design, chipset, and software operation are likely to vary among the Accused Products, and therefore the Infringement Contentions would differ on a product-by-product comparison. *Id.* at 6 n.4. However, Plaintiff claims that such information cannot be ascertained from publicly available information, and thus, the Infringement Contentions are sufficient. *Id.*

Plaintiff is correct that using an exemplary product to outline infringement contentions can be sufficient. In *Connectel*, the plaintiff was ordered "to designate exemplar accused infringing products and compare those products to each asserted patent on a claim by claim, element by element basis." 391 F. Supp. 2d at 528. Yet, this is not what Plaintiff has done here. In this case, Plaintiff linked each claim limitation to the 802.11n draft standard, creating a single claim chart for each asserted claim and serving that same claim chart on every Defendant. MOTION, Exh. B–K.

The 802.11n standard is not an exemplary product for the purposes of Infringement Contentions, as Plaintiff implies. The 802.11n standard is merely a functional guideline for compliant products, and as discussed above, the 802.11n standard does not delineate the hardware, firmware, or operational details of compliant devices. GARODNICK AFFIDAVIT at 4–5; *see also* section I(A), *supra*.

11

Moreover, the plaintiff in *Connectel* was admonished for serving Infringement Contentions which were seemingly more detailed than those served by Plaintiff Linex in the instant case. 391 F. Supp. 2d at 528–29. In *Connectel*, the plaintiff accused over one hundred products of infringement, and the plaintiff served infringement contentions containing four separate claims charts, broken down into generic categories of 1) routers, 2) switches, 3) gateways/other products, and 4) Cisco IOS software. *Id.* at 527. The claim charts merely parroted the asserted claim language and failed to explain how the accused products infringed the asserted patents. *Id.* The only references to the accused products in the plaintiff's infringement contentions were contained in footnotes referencing the defendant's product manuals and third-party publications, all of which failed to identify any corresponding elements of the asserted claims. *Id.* There, the Court noted:

> The charts in ConnecTel's PICs do not refer in their text to a single structure, process, algorithm, feature or function of any accused product. ConnecTel provides no explanation of how Cisco's accused infringing products read on the asserted claim language. Because of these deficiencies, Cisco is unable to crystallize its non-infringement and invalidity theories, and the parties are hindered in identifying what claim terms need construction. Quite simply, ConnecTel needs to provide much greater detail in its PICs in order to comply with Patent Rule 3-1.

*Id.* at 528.

Here, Plaintiff Linex has served even less detailed Infringement Contentions containing a single claim chart for each asserted claim, which was identical for every Defendant and which failed to even differentiate between generic categories of products, as the plaintiff did in *Connectel*. Additionally, Plaintiff Linex merely parroted the 802.11n draft standard, failing to identify with any level of detail how the Accused Products infringe the asserted claims. Further, Plaintiff Linex makes no specific references to any of the Accused Products within the claim chart. The only specific references to Accused Products are contained in the section identifying specific models and products

accused of infringing. Like *Connectel*, Plaintiff Linex has failed to identify any structure, process, system, or apparatus within the Accused Products that corresponds to any claim limitation.

Moreover, the plaintiff in *Connectel* similarly—and unsuccessfully—argued that courts in the Eastern District of Texas have previously sanctioned limited infringement contentions in software cases "[to] allow parties to supplement their preliminary infringement contentions [with] technical information produced during discovery." *Id.* at 528. However, there the Court explained that such supplementation was allowed in previous software cases where detailed infringement contentions were initially served based on the plaintiff's pre-suit diligence in identifying relevant processes and where the plaintiff only wanted to view precise pieces of source code to further build its case. *Id.* at 528 (citing *American Video Graphics, L.P. v. Electronic Arts, Inc.*, 359 F. Supp. 2d 558, 560 (E.D. Tex. 2005) (Davis, J.)).

As previously noted in section I(A), *supra*, this argument has some merit, specifically as it relates to proprietary firmware or software utilized by the Accused Products. However, Plaintiff cannot rely on this argument to justify the entire lack of detail contained in its Infringement Contentions. Defendants point out that Plaintiff could have reverse engineered or inspected the Accused Products at minimal cost, but Plaintiff did not do so. MOTION at 11 n.2. While reverse engineering "is not synonymous with whether [a plaintiff] has complied with Patent [Rule]3-1," the completion of this task would evidence Plaintiff's diligence in preparing the Infringement Contentions now at issue. *STMicroelectronics, Inc. v. Motorola, Inc.*, 308 F. Supp. 2d 754, 755 (E.D. Tex. 2004) (quoting *Network Caching Technology, LLC v. Novell, Inc.*, 2003 WL 21699799, *4–*5 (N.D. Cal. 2003)); *see also Connectel*, 391 F. Supp. 2d at 528 (emphasizing the importance of plaintiff's pre-suit diligence in preparing infringement contentions) (citation omitted). Further,

13

such evidence would buttress Plaintiff's claim that it was impossible to provide further detail in the Infringement Contentions based on publicly available information.

An additional reason that Plaintiff's Infringement Contentions are insufficient is that the technology and system claim structure at issue are complex. If the asserted patent claimed a simple mechanical device, Plaintiff would clearly be required to include more detailed information linking the Accused Device to the asserted claim limitations than Plaintiff has here. Not only is the technology complex in the instant action, but there are numerous parties and Accused Products. Consequently, the level of complexity greatly increases. As a result of this complexity, more thorough Infringement Contentions will ensure that Defendants will better understand Plaintiff's claims. *Finisar Corp. v. DirecTV Group, Inc.*, 424 F. Supp. 2d 896, 901 (E.D. Tex. 2006) (citation omitted) (noting that the goals of the Local Patent Rules include providing adequate notice and information to all parties and ensuring full, timely discovery).

At this point in time, Plaintiff must list each individually Accused Product and go through specific infringement contentions for each. For information not publicly available, Plaintiff must note that such detail is forthcoming pending further discovery and Plaintiff must note from whom such discovery is expected. In doing so, Plaintiff would meet the requirements of Patent Rule 3-1.

### III. Specific Claim Limitations

Defendants' remaining arguments are directed towards specific claim limitations. First, Defendants argue that Plaintiff fails to address how OFDM satisfies the spread-spectrum claim limitation. MOTION at 11–12. Second, Defendants contend that Plaintiff similarly fails to address the simultaneous transmit and receive claim limitation. *Id.* at 12. Finally, Defendants argue that Plaintiff has not identified the means-plus-function claim limitations governed by section 112(6).

14

*Id.* at 12–13; 35 U.S.C. § 112(6).

Plaintiff asserts that Defendants' arguments regarding OFDM and simultaneous transmit and receive are issues that require expert opinion testimony after claim construction. OPPOSITION at 11–13. As such, Plaintiff contends that this level of detail is not required by the Patent Rules. *Id.* Further, Plaintiff responds that it does not contend that any Asserted Claims or single claim element are means-plus-function claims governed by section 112(6). *Id.* at 13.

Patent Rule 3-1(c) provides that infringement contentions must contain, "[a] chart identifying specifically where each element of each asserted claim is found within each Accused Instrumentality." As previously noted, Patent Rule 3-1 requires a plaintiff to provide "particular theories of infringement with sufficient specificity to provide defendants with notice of infringement beyond that which is provided by the mere language of the patent rules themselves." *STMicroelectronics, Inc. v. Motorola, Inc.*, 308 F. Supp. 2d 754, 755 (E.D. Tex. 2004) (quoting *Network Caching Technology, LLC v. Novell, Inc.*, 2003 WL 21699799, *4–*5 (N.D. Cal. 2003)).

Plaintiff is correct in its assertion that explaining how OFDM is a spread spectrum modulation technique is not required by Patent Rule 3-1. Similarly, Defendants' arguments regarding the simultaneous transmit and receive claim limitations are better reserved as non-infringement arguments after claim construction.[9] Infringement contentions "are not meant to provide a forum for litigation of the substantive issues; they are merely designed to streamline the

---

[9] Specifically, Defendants assert that "unless the claimed invention is inexplicably designed to talk to itself, the asserted claims require one device to transmit the signal and a separate device to receive that same transmitted signal." REPLY at 5. While Plaintiff is required to explain how each Accused Product infringes each asserted claim—whether alone or in conjunction with other devices—Plaintiff need not argue the merits of its Infringement Contentions at this point. Whether the asserted claims require the transmission and reception of a signal by one or more of the Accused Products is a question of claim construction and infringement that need not be addressed at this time.

discovery process." *STMicroelectronics, Inc. v. Motorola, Inc.*, 308 F. Supp. 2d 754, 755 (E.D. Tex. 2004) (quoting *Network Caching Technology, LLC v. Novell, Inc.*, 2003 WL 21699799, *4–*5 (N.D. Cal. 2003)).

At this point in the litigation, Plaintiff is merely required to outline in detail its specific Infringement Contentions regarding particularly Accused Products. As noted above, the Infringement Contentions are not intended to be a forum for adjudicating the merits of the plaintiff's contentions. *STMicroelectronics*, 308 F. Supp. 2d at 755 (citation omitted). The Infringement Contentions are intended to disclose information as a means to expediting the discovery process. As such, the merits of Plaintiff's contentions—that OFDM is a spread spectrum modulation technique—is not at issue in the instant motion. Rather, the issue is whether Plaintiff's Infringement Contentions fulfill the particular requirements of Patent Rule 3-1, by disclosing sufficiently detailed information.

Finally, Patent Rule 3-1(c) does require an identification by Plaintiff of "each element that such party contends is governed by 35 U.S.C. section 112(6), the identity of the structure(s), act(s), or material(s) in the Accused Instrumentality that performs the claimed function." As Plaintiff does not contend that any claim or claim element is governed by section 112(6), Plaintiff is not required to include any such identification.

**CONCLUSION**

For all the foregoing reasons, Defendants' Motion to Strike Linex's Infringement Contentions or In the Alternative, Motion to Compel Linex to Provide Infringement Contentions that Comply with Patent Rule 3-1 is **GRANTED-IN-PART** and **DENIED-IN-PART**. Defendants' Motion to Strike Linex's Infringement Contentions is **DENIED**. Defendants' Motion to Compel Linex to

Provide Infringement Contentions that comply with Patent Rule 3-1 is **GRANTED**.

Plaintiff is **ORDERED** to supplement its Infringement Contentions by October 24, 2008. Plaintiff must proceed on a product-by-product basis, creating a separate claim chart for each Accused Product. If the parties can agree on exemplary products, Plaintiff may supplement using exemplary products. Similarly, if all the parties can agree, Plaintiff may supplement using categories of products. However, if no agreement can be reached, Plaintiff must separately delineate specific Infringement Contentions for every Accused Product on an individual basis.

Moreover, this supplementation requires the disclosure of all non-proprietary information regarding how the different Accused Products incorporate the claimed systems and methods. Plaintiff must particularly point to the portion of the Accused Product which is asserted to perform the function described in each claim limitation. Plaintiff must delineate, to the extent possible, how the function is asserted to be performed by the Accused Product and how that comports with each claim limitation. Additionally, Plaintiff must also point to a particular provision of the 802.11n draft standard when a particular contention is based thereon.

While Plaintiff may not be able to specifically identify the operations of each Accused Product if there is proprietary information yet to be disclosed, Plaintiff can—and is required to—generically identify how the products link to specific claim limitations. To the extent that Plaintiff lacks relevant information, Plaintiff should explicitly note what information is needed and from whom it is needed to enable Plaintiff to complete all further supplementation.

To the extent necessary, Plaintiff is further **ORDERED** to supplement its Infringement Contentions as soon as Plaintiff has had the opportunity to fully review discovery containing any proprietary information regarding specifically Accused Products. This includes discovery of

proprietary information from Defendants, as well as information obtained from third parties. For example, Plaintiff has indicated an intention to seek information from third-party chip manufacturers. To the extent necessary, Plaintiff must supplement the Infringement Contentions with this information as soon as practicable.

**So ORDERED and SIGNED this 19th day of September, 2008.**

_____
JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE